GOLDBERG v. GOLDBERG.

1. APPEAL AND ERROR—EQUITY CASES HEARD DE NOVO—TRIAL COURT'S FINDINGS.
   The Supreme Court hears equity cases *de novo* on appeal and is not bound by the finding of facts of the trial judge.

2. SAME—PLAINTIFF MUST MAKE OUT A CASE.
   On appeal in an equity case the Supreme Court must be satisfied that a plaintiff makes out his case before he can have a decree in his favor.

3. FRAUD—BURDEN OF PROOF—INFERENCES—CIRCUMSTANTIAL EVIDENCE.
   The burden of showing fraud is upon the person alleging it, and fraud is never presumed nor lightly inferred but may be established by circumstantial evidence.

4. CANCELLATION OF INSTRUMENTS—FRAUD—DIVORCE—EVIDENCE.
   In suit to cancel certain deeds, mortgages and assignments by former wife of one defendant against the former husband and his brother, the appellant, to whom mortgage had been assigned that incumbered property which divorce decree ordered husband to transfer free and clear to wife, evidence

*held*, insufficient to show that former husband's money satisfied the mortgagee who assigned the mortgage to appellant who did not stand in a fiduciary relation to plaintiff, or that the assignment worked a fraud upon plaintiff who knew of the mortgage prior to divorce.

5. QUIETING TITLE—PARTIES—JURISDICTION.

A deed may not be cancelled on the ground of fraud where all of the parties concerned are not before the court as the court is without jurisdiction to remove such a deed as a cloud upon plaintiff's title.

Appeal from Berrien; Brown (William B.), J., presiding. Submitted October 9, 1940. (Docket No. 15, Calendar No. 41,158.) Decided December 10, 1940.

Bill by Jeanette Goldberg against Harry Goldberg and Morris Goldberg to cancel certain instruments affecting title to real property. Decree for plaintiff. Defendant Morris Goldberg appeals. Reversed and decree for appellant.

*Levinson & Levinson* (*Clarence E. Butler*, of counsel), for appellant.

*Charles W. Gore*, for appellee.

SHARPE, J. Plaintiff, Jeanette Goldberg, filed a bill of complaint against Harry and Morris Goldberg for an injunction and to cancel certain deeds, mortgages, and assignments.

Jeanette Goldberg and Harry Goldberg, one of the defendants, were husband and wife up to February 10, 1937, when Jeanette Goldberg was granted a divorce from her husband. In 1910, Harry Goldberg was the record owner of the premises in question, consisting of a small farm in Berrien county. On March 10, 1931, plaintiff and her husband, Harry

Goldberg, mortgaged this property for $1,000. On January 12, 1937, Mr. and Mrs. Oehlhaffen, the assignees of the mortgage, threatened to foreclose the mortgage at its expiration in March, 1937, unless the 1934 and 1935 taxes were paid. On February 3, 1937, the Oehlhaffens were paid and the mortgage assigned to defendant Morris Goldberg, a brother of Harry Goldberg, but the assignment was not recorded until February 27, 1937.

The divorce granted to plaintiff provided that Harry Goldberg convey the premises in question to plaintiff "free and clear of any and all mortgages, liens, taxes or any other incumbrance." The decree also provided:

"It appearing, however, on the trial of said cause, that some doubt exists as to the present ownership of said premises, and the present condition of the title thereof, it is further ordered, adjudged and decreed that if plaintiff Jeanette Goldberg is divested of the title to said premises herein decreed to her, then in that event the said Harry Goldberg, defendant herein, shall pay to the said Jeanette Goldberg, plaintiff, in cash, the sum of $2,500 for the support and maintenance of the said Jeanette Goldberg, and the said Jeanette Goldberg shall have a lien on any and all real estate owned by the said defendant in the city of Chicago, county of Cook, State of Illinois, it appearing from the evidence that the only real estate owned by the said Harry Goldberg is the premises above described and the premises located in the city of Chicago as aforesaid."

Morris Goldberg started foreclosure proceedings under his mortgage assignment on April 10, 1937, which proceeded to sale and sheriff's deed issued on July 6, 1937. But prior to the expiration of the redemption period, plaintiff filed her bill of complaint,

the main purpose of which was to cancel the mortgage and subsequent assignments.

In the bill of complaint it is alleged that Harry Goldberg paid the mortgage with his own funds; and that Harry and Morris Goldberg, conspiring to cheat and defraud plaintiff of her rights and intending to deprive her of the ownership of this property, took the assignment of the mortgage in the name of Morris Goldberg instead of accepting from the Oehlhaffens a discharge of the mortgage to Harry Goldberg.

The trial court found that plaintiff sustained the allegations in her bill of complaint and entered a decree that the sheriff's deed to Morris Goldberg be set aside; that the mortgage dated March 10, 1931, has been fully paid and satisfied and is not a valid claim against the premises and is discharged of record; and that plaintiff is the owner in fee simple by a perfect title against Harry and Morris Goldberg.

Defendant Morris Goldberg appeals and claims that the allegations of the bill of complaint are not supported by the evidence; that the findings and decree of the court are contrary to the evidence; and that plaintiff's failure to complain for one year and four months after the alleged fraud came to her knowledge precludes her from complaining now.

The record shows that on February 3, 1937, Harry and Morris Goldberg were at the office of Gleason & Knapp, real-estate brokers in the city of Benton Harbor; that Harry called Mrs. Oehlhaffen and stated that he was going to pay off the mortgage and to bring down the papers. When the Oehlhaffens arrived at the office, $930 was paid to them and they executed an assignment to Morris Goldberg. Of the amount above paid, $920 was paid in cash and

Morris Goldberg gave his check for the balance. It appears that during the above negotiations Harry and Morris Goldberg retired to the back of the office and held a private conversation.

In the instant case, we have in mind that the Supreme Court hears equity cases *de novo* on appeal and is not bound by the finding of facts of the trial judge. See *Richard* v. *Detroit Trust Co.*, 269 Mich. 411. We must be satisfied that a plaintiff makes out his case before he can have a decree in his favor. *Troub* v. *Thorp*, 152 Mich. 363. The burden of showing fraud is upon the person alleging it. *John Heidsik Co.* v. *Rechter*, 291 Mich. 708. Fraud is never presumed, *Rossman* v. *Hutchinson*, 289 Mich. 577, nor is it to be lightly inferred. *Richard* v. *Detroit Trust Co., supra.* It may be established by circumstantial evidence. *Detroit Trust Co.* v. *Hartwick*, 278 Mich. 139.

In the case at bar, there is a sequence of circumstances and complications which point a suspicious finger at the honesty of the transaction and, as opposed to this, there is the direct testimony of Morris Goldberg that the transaction was *bona fide*. We are unable to find any evidence from which an inference can be drawn that Harry Goldberg advanced the money to pay for the assignment of the mortgage to Morris Goldberg. There is affirmative proof that Morris Goldberg raised $625 just prior to the time the mortgage was assigned to him and there is the additional evidence that Morris Goldberg usually carried $400 to $500 in cash on his person, which added to the $625 would be more than sufficient to pay the mortgage.

The evidence relied upon to sustain the charge that Harry Goldberg paid some of the money for the assignment of the mortgage is that Harry accom-

panied his brother Morris to Benton Harbor; that Harry called Mrs. Oehlhaffen and told her to bring the papers down as "I am going to pay off the mortgage;" that during the time the assignment was being prepared and executed, Harry and Morris Goldberg retired to the back of the room and held a conversation; and that the money paid to the Oehlhaffens except the sum of $10 was paid either by Mr. Knapp or Mr. Gleason. In our opinion the above evidence does not support the charge that it was Harry's money that was used in the above transaction. At most it is mere conjecture and does not rise to the dignity of sustaining proof.

Nor do we find that the purchase of the mortgage by Morris Goldberg worked a fraud upon plaintiff. Morris Goldberg stood in no fiduciary relationship to plaintiff. He was free to purchase the mortgage and take an assignment of the same as any stranger to the transaction. The fact that he purchased the mortgage at the request of his brother does not of itself cast any burden upon him to defend his purchase. He merely became a new lienholder. Moreover, plaintiff knew that there was an unsatisfied mortgage on the property prior to the divorce proceedings.

Plaintiff also alleged certain facts pertaining to the execution in 1910 of a warranty deed by herself and Harry Goldberg to Louis Goldberg, Harry's father; that this deed was destroyed; and that the deed pertaining to this transaction recorded on February 17, 1937, was spurious and made pursuant to a plot to injure plaintiff by incumbering her title. The trial court held that the deed of October 31, 1910, be set aside and removed as a cloud on plaintiff's title. The record discloses that in the above proceeding the court did not have before it all of the parties

concerned and, therefore, was without jurisdiction to remove this deed as a cloud from plaintiff's title as established by the divorce decree.

The decree entered in the circuit court is reversed and one will be entered here dismissing plaintiff's bill of complaint. Appellant will have costs of both courts.

BUSHNELL, C. J., and BOYLES, CHANDLER, NORTH, McALLISTER, WIEST, and BUTZEL, JJ., concurred.