## SCHAUPETER v. SCHAUPETER.

1. Evidence—Statutes—Opposite Party—Uncontradicted Testimony.
   In suit to set aside a bill of sale of household furniture which plaintiff and her former husband had purchased during their marriage, plaintiff, who called defendant husband and purchaser of the furniture for cross-examination under the statute was bound by their uncontradicted statements of fact as to the alleged sale especially where such testimony was not inherently improbable nor incredible (3 Comp. Laws 1929, § 14220).

2. Same—Opposite Party.
   The testimony of the opposite party, called as a plaintiff's witness, must be treated as a whole (3 Comp. Laws 1929, § 14220).

3. Same—Opposite Party—Contradiction.
   The testimony of the opposite party, called as plaintiff's witness, must be weighed and considered the same as that of any other witness and while it may be contradicted, it is binding upon the plaintiff except so far as contradicted (3 Comp. Laws 1929, § 14220).

4. SALES—EVIDENCE.

Conclusion of trial court that sale of personalty· was a proper one was supported by the uncontradicted testimony of two of the defendants who were the parties who had negotiated it and who were called by plaintiff under the statute (3 Comp. Laws 1929, § 14220).

5. FRAUDULENT CONVEYANCES—STATUTES—SALE OF FURNITURE BY HUSBAND.

Statute relating to sales, assignments and mortgages of goods and chattels made in fraud of creditors and providing for filing of bill of sale of personal property in the office of the register of deeds has no application to sale by husband of household furniture which had been purchased by him and his wife during marriage (3 Comp. Laws 1929, § 13421, and R. S. 1846, chap. 81, §§ 7a, 7b, 7c, as amended and added by Act No. 289, Pub. Acts 1937).

6. HUSBAND AND WIFE—SALE OF HOUSEHOLD FURNITURE BY HUSBAND.

During a marriage the husband has the legal right to sell household furniture purchased by him and his wife during such marriage and may transfer title thereto.

7. SALES—HOUSEHOLD FURNITURE—DIVORCE—ALIMONY.

Where sale of household furniture was made by husband before he commenced divorce proceedings and before it was shown that he even intended to commence same, such sale may not be said to have been made in order to defeat the collection of alimony that might be awarded to wife.

8. SAME—HOUSEHOLD FURNITURE—FRAUD—CONSIDERATION.

In wife's suit against former husband and his transferee of household furniture to set aside bill of sale and to declare that plaintiff had an interest in such property, evidence required conclusion that transferee was not a party to any fraud or attempted fraud on any rights of plaintiff where it appears that he paid a substantial consideration therefor, is not shown to have known that a divorce suit was in contemplation when making the purchase nor that the sale was being made without the consent of plaintiff.

9. EVIDENCE—OPPOSITE PARTIES—STATUTES—SALES—FRAUD.

In suit to set aside bill of sale on the ground of fraud plaintiff was bound by the testimony of opposite parties called for cross-examination under the statute both as to whether or not the sale was actually made as well as to whether there was fraud involved (3 Comp. Laws 1929, § 14220).

10. APPEAL AND ERROR—FINDINGS OF TRIAL COURT—WEIGHT OF EVIDENCE.

　　While the Supreme Court hears chancery cases on appeal *de novo* and is not bound by the findings of fact of the trial court, it does recognize that the trial judge had the advantage of seeing the parties and hearing them testify and, therefore, in a better position to weigh the testimony.

11. SALES—HOUSEHOLD FURNITURE—FRAUD—EVIDENCE.

　　Examination of record in former wife's suit to set aside husband's bill of sale of household furniture *held*, not to have disclosed fraud justifying relief to plaintiff.

Appeal from Wayne; Ferguson (Frank B.), J. Submitted January 15, 1947. (Docket No. 49, Calendar No. 43,553.) Decided April 8, 1947.

Bill by Betty Jane Schaupeter against John R. Schaupeter and others to set aside a sale of personal property and other relief. Decree for defendants. Plaintiff appeals. Affirmed.

*Davidow & Davidow,* for plaintiff.

*James Montante,* for defendants.

CARR, C. J. This case involves the ownership and right to possession of certain household furniture. The plaintiff and the defendant John R. Schaupeter were married in the late summer or early fall of 1941, the exact date not appearing in the record. Thereafter they purchased the furniture in question, paying therefor approximately $1,150, and used it in an apartment which they rented. In April, 1942, defendant John R. Schaupeter entered the armed forces of the United States. The following October he returned to his home on leave and at that time he and defendant had some difficulty that brought about their separation. On October 7, 1942, said defendant caused the furniture to be re-

moved from the apartment and stored in the place of business of Edgar Patrick, operating as the Livernois Moving & Storage Company. That night plaintiff learned the furniture had been removed, but it does not appear that she made any inquiry as to its location, or that she made any effort to obtain possession of it.

Some 4 or 5 days later defendant John R. Schaupeter executed and delivered to the defendant Otto Matzke a bill of sale of the property in question. It is the claim of said defendants that the transaction was entered into in good faith and that Matzke paid the sum of $500 by way of consideration. Shortly thereafter defendant John R. Schaupeter instituted a suit for divorce. Plaintiff herein filed a cross-bill and a decree was entered in her favor on October 24, 1944. Approximately six weeks before the entering of the decree, but after the divorce case had been tried, plaintiff instituted the present suit against John R. Schaupeter, Geraldine Schaupeter, Otto Matzke and Edgar Patrick, charging that said defendants were parties to a conspiracy to defraud the plaintiff of her rights and interest in the furniture. Plaintiff alleged, in substance, that there was in fact no actual sale to Matzke but if there was it was of such fraudulent character that plaintiff was entitled to have it set aside. The bill of complaint made reference to the pending divorce action, asserting that a proposed decree therein was about to be signed, "awarding all the defendant John R. Schaupeter's interest in said furniture to this plaintiff, the court having found that the plaintiff was a joint owner of said household furniture and equipment and the alleged sale to defendant Otto Matzke was under such suspicious circumstances as to raise grave doubts as to its legality." It may be noted in passing that the de-

cree in the divorce case does not set forth any such finding as is embodied in the language quoted. Plaintiff asked, also, that on the granting of the decree of divorce she should be permitted to amend the bill of complaint by inserting said decree therein. It does not appear that any such amendment was actually made, but the decree was introduced in evidence on the trial in circuit court.

The defendant Geraldine Schaupeter, the mother of John R. Schaupeter, was joined as a party defendant, because, sometime in 1943, she purchased a refrigerator, included in the furniture. She was not present at the trial but defendant Matzke testified, without contradiction, that she paid $170 for this refrigerator, and that he paid from said sum the amount of the storage charges up to October 7, 1943. It must be assumed that Matzke retained the balance of the payment, there being no showing to the contrary.

The defendants filed answers denying the existence among them of any conspiracy to defraud plaintiff. Defendant Patrick also filed a cross-bill, asking that the court decree a lien on the furniture for the amount of his storage charges and that the other parties to the case be required to litigate among themselves the question of ownership of the furniture.

It appears from the record that on the trial of the divorce case proofs were offered with reference to the alleged sale by John R. Schaupeter to Matzke. The decree entered contains the following recital:

"It having been claimed by defendant and cross-plaintiff, Betty Jane Schaupeter, that the household furniture formerly owned by the parties hereto is still owned by and within the control of the plaintiff and cross-defendant, John R. Schaupeter, and the plaintiff and cross-defendant having sworn that the

furniture no longer belonged to him and that he had sold the same prior to the time the action for di-vorce was instituted, and the court being fully in-formed in the premises, and the defendant and cross-plaintiff, Betty Jane Schaupeter, having ex-pressed a desire and having signified her consent and agreeableness to accept in full settlement of all her property rights any such title to the furniture as she may be able to establish as resting in the plaintiff and cross-defendant, and the plaintiff and cross-defendant also being agreeable thereto.
\* \* \*

"It is hereby further ordered, adjudged and de-creed that the defendant and cross-plaintiff, Betty Jane Schaupeter, shall have as her prop-erty settlement such title to the furniture herein mentioned as she may be able to establish as being owned by or under the control of the plaintiff and cross-defendant, John R. Schaupeter, such property settlement to be settlement in full of all defendant's and cross-plaintiff's property rights and/or dower in any property heretofore owned, now owned or of which the plaintiff and cross-defendant may here-after become possessed."

No appeal from the divorce decree was taken by either party. Under the specific terms of the decree it will be noted that the award to plaintiff was not based on any right, title or interest in the property that the court found she possessed, but rather on the theory that John R. Schaupeter might be shown to be the actual owner thereof. In such event what-ever rights he had were decreed to belong to plain-tiff. Following the trial of the instant case in the circuit court the judge before whom the matter was heard, determined that plaintiff was not entitled to the relief sought by her, and that the defendant and cross-plaintiff Patrick was entitled to a lien on the furniture for the storage charges. From the decree

entered plaintiff has appealed, raising no question, however, as to the right of defendant and cross-plaintiff Patrick to the relief granted to him.

The first question for determination in the case is whether there was, in fact, a sale of the property by John R. Schaupeter to defendant Matzke. While the trial court made no specific finding on this issue, it is apparent from the decree entered that he decided against the claim of the plaintiff.

On the trial plaintiff called, for cross-examination under the statute (3 Comp. Laws 1929, § 14220 [Stat. Ann. § 27.915]), the defendants John R. Schaupeter and Otto Matzke. Each testified to conversations between them on the 11th and 12th of October, 1942, with reference to the sale and purchase of the furniture. Each claimed that an agreement was reached as to the consideration, and that Matzke paid Schaupeter accordingly the sum of $500 in cash. They further testified that a bill of sale was prepared by an attorney and filed in the office of the register of deeds, presumably under the provisions of Act No. 289, Pub. Acts 1937 * (Comp. Laws Supp. 1940, § 13421 *et seq.,* Stat. Ann. 1946 Cum. Supp. § 26.926 *et seq.*). Such bill of sale was offered in evidence as exhibit 2, from which it appears that said filing occurred on October 13, 1942, the day following the execution and delivery of the instrument. Having called said defendants for cross-examination, plaintiff was bound by their statements of fact insofar as the same were not contradicted by other proofs in the case. The record does not contain any contradictory evidence as to the alleged sale; nor may it be said that defendants' testimony was inherently improbable or incredible.

---

* This act amended section 7 of chapter 81, Rev. Stat. 1846 and added three sections to stand as sections 7a, 7b and 7c.—REPORTER.

In commenting on a comparable situation presented in *Re Estate of Taylor*, 271 Mich. 404, it was said:

"When plaintiffs called defendant for cross-examination under the statute, defendant thereby became plaintiffs' witness. Plaintiffs are bound by his testimony except so far as it was disputed. In the consideration of defendant Taylor's testimony, plaintiffs may not select isolated portions thereof and claim a force and effect for such portions of his testimony which the whole of his testimony does not warrant. The testimony of the opposite party as a witness must be treated as a whole; and, when so treated, defendant's testimony negatives plaintiffs' claim. *Jones* v. *Railroad Co.*, 168 Mich. 1; *Cook* v. *Railroad Co.*, 189 Mich. 456; *Steele* v. *City of Ionia*, 209 Mich. 595; *O'Dell* v. *Day*, 214 Mich. 566; *Waller* v. *Sloan*, 225 Mich. 600; *Swank* v. *Croff*, 245 Mich. 657; *Fleegar* v. *Consumers Power Co.*, 262 Mich. 537; *Snyder* v. *Johnson*, 264 Mich. 286.

"As said in *Fleegar* v. *Consumers Power Co.*, *supra:*

" 'His testimony, being in the case, must be weighed and considered the same as that of any other witness (*City of Kalamazoo* v. *Standard Paper Co.*, 182 Mich. 476); and though plaintiff was at liberty to contradict his testimony (*Cook* v. *Railroad Co.*, 189 Mich. 456), she was bound thereby (*Aphoresmenos* v. *McIntosh*, 189 Mich. 680), except so far as such testimony was contradicted (*Swank* v. *Croff*, 245 Mich. 657).' "

See, also, *Riesterer* v. *Couchez*, 284 Mich. 512; *Dean* v. *Torrence*, 299 Mich. 24; *Colvaruso's Guardian* v. *Stroh Brewing Co.*, 301 Mich. 245; *Brkal* v. *Pletcher*, 311 Mich. 258; 32 C. J. S. pp. 1107 *et seq.* The testimony of the defendants not having been contradicted by other proofs, it follows that the

rule recognized in the cases cited is applicable in the case at bar and that, in consequence, the conclusion of the trial court that the sale was actually made was proper.

The bill of complaint alleged, and counsel for plaintiff argues in this Court, that the transfer of the ownership of the property to defendant Matzke was in fraud of plaintiff's rights and should, for that reason, be set aside. In support of such claim counsel quotes 3 Comp. Laws 1929, § 13421 (Stat. Ann. § 26.926), with reference to sales, assignments and mortgages made in fraud of creditors. Said section was amended by Act No. 289, Pub. Acts 1937, above cited, which also added three new sections with reference to the filing of bills of sale of personal property in the office of the register of deeds. As above noted, the bill of sale, given by John R. Schaupeter to Matzke, was filed under this statute. Without discussing the section cited by plaintiff or the protection afforded thereby to creditors we think that it has no application to the facts in the case at bar.

Counsel also direct attention to *Holland* v. *Holland,* 121 Mich. 109. The facts there, however, were materially different from those involved in the case at bar. It appears from the opinion in that case that plaintiff was induced to sign a conveyance of real property through the misrepresentations of her husband as to the purpose of the instrument and the consideration to be received. It was, in fact, given to the husband's mother without any consideration. At that time the husband had consulted his attorney with reference to the starting of divorce proceedings. Subsequently, the divorce case came on for trial, a decree was granted to the wife on her cross-bill, and the taking of testimony with reference to the amount of alimony to be awarded

her was referred to a circuit court commissioner. Under the circumstances involved it was held that the conveyance was intended to operate as a fraud on the wife and to prevent her from enforcing, in the divorce proceedings, her dower and alimony rights. The court further concluded that the signature of the wife had been obtained by fraud and that, in consequence, she was not bound thereby.

In the case at bar, however, we have a materially different situation. John R. Schaupeter had the legal right to sell the property in question and to transfer title thereto. *Singer Manfg. Co.* v. *Cullaton,* 90 Mich. 639; *Parsons* v. *Kimmel,* 206 Mich. 676; 41 C. J. S. p. 417 *et seq.* At the time of the sale to Matzke the divorce case had not been started, nor was any showing made on the trial as to whether defendant John R. Schaupeter intended at that time to bring such suit. He testified, in substance, that he moved the furniture from the apartment and placed it in storage in order to avoid further payment of rent. He further testified that he made the sale in order to raise money to enable him to return to the camp from which he was on leave. It is undisputed, also, that shortly after the transaction, he paid a balance due on the furniture, a check in the sum of $125 being sent to the party from whom it was purchased in 1941. While the bill of complaint alleged plaintiff owned an interest in the property it seems evident that such claim was abandoned in the divorce case. As noted, the decree of divorce, by which plaintiff is bound, made reference solely to the possible ownership by the husband. For reasons too obvious to require discussion John R. Schaupeter is not in position to ask that the sale be set aside. The record does not show whether plaintiff, in the divorce proceedings, asked for an allowance of alimony. In any event, none was

granted by the decree. Plaintiff is not in position to claim that the sale was made by her then husband in order to defeat the collection of alimony that might be awarded to her.

Without reference to possible motives on the part of John R. Schaupeter in disposing of the furniture, the conclusion cannot be avoided that, under the testimony given by him and by defendant Matzke, the latter was not a party to any fraud or attempted fraud on any rights of plaintiff. There is no showing that Matzke knew a divorce case was in contemplation when he made the purchase, nor is there any evidence that he then knew the sale was being made without the consent and approval of plaintiff. He was told that Mr. and Mrs. Schaupeter were having some difficulties and that Schaupeter desired to sell the furniture to raise money. Under such circumstances Matzke offered to purchase it. Much stress is laid on the fact that the storage receipt was dated October 7, 1942, and was issued to Matzke. There is no evidence, however, as to when such receipt was actually prepared. Even if, as claimed on behalf of plaintiff, the furniture was stored, in the first instance, in Matzke's name, such fact is not sufficient to establish fraud on the part of Matzke in view of his uncontradicted testimony as to what occurred. On the question of fraud, as well as on the issue before discussed as to whether there was an actual sale of the property, plaintiff was·bound by the testimony of defendants, called for cross-examination, to the extent that their statements of fact were not contradicted by other proofs. *Riesterer* v. *Couchez, supra.*

We recognize that this Court hears equity cases *de novo* on appeal, and is not bound by the findings of fact of the trial court. *Goldberg* v. *Goldberg,* 295 Mich. 380. We also recognize that the judge before

whom the matter was heard had the advantage of seeing the parties and hearing them testify. He was, in consequence, in a better position than is this Court to weigh the testimony. On the record before us we are impressed that his conclusion that no fraud had been established justifying granting to plaintiff the relief sought by her, was fully justified. *Sun Life Assurance Co. of Canada* v. *Allen,* 270 Mich. 272; *Goldberg* v. *Cities Service Oil Co.,* 275 Mich. 199.

For the reasons stated the decree of the circuit court is affirmed, with costs to appellees.

BUTZEL, BUSHNELL, SHARPE, BOYLES, REID, NORTH and DETHMERS, JJ., concurred.